UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIMERLING TRUCK PARTS, INC., et al., | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ] CV-04-CO-00767-S |
| | ] |
| CITY OF BIRMINGHAM and OFFICER SCOTT MORRO, | ] |
| | ] |
| Defendant(s). | ] |

MEMORANDUM OF OPINION

This is an action brought pursuant to 42 U.S.C. § 1983 in which the plaintiffs complain they have been deprived of rights, privileges, or immunities afforded them under the Constitution or laws of the United States of America. The plaintiffs, Kimerling Truck Parts, Inc., ("Kimerling"), and Steven and Victor Feigelson, seek damages and injunctive relief, alleging the defendants City of Birmingham and police officer Scott Morro took their property without due process of law in violation of the Fifth Amendment to the United States Constitution, violated the Fourth Amendment to United States Constitution which provides that all persons

shall be secure against unreasonable seizure, and violated the Fourteenth Amendment to the United States Constitution which provides that all persons and citizens shall be entitled to equal protection under the law. (Complaint, Counts 2, 3, 4.)  The plaintiffs have asserted additional claims under Alabama state law.  The action was removed from the Circuit Court of Jefferson County, Alabama, and the cause is presently before the court for consideration of Defendants' motions for summary judgment as to all the plaintiffs' claims and as to Defendants' counterclaim. (Docs. 21, 22.)

I.     Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting

evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

II.   Discussion.

   A.   Facts.

The parties did not comply with the Court's Scheduling Order [Doc. 7] requiring a Joint Status Report and the plaintiffs did not comply with the Court's Initial Order [Doc. 4] requiring that they respond to the defendants' statement of alleged undisputed facts. Nevertheless, the following facts, derived primarily from the plaintiffs' evidentiary submission,[1] are not in dispute:

Plaintiff Kimerling is an Alabama corporation doing business at 125 Finley Boulevard, within the city limits of Birmingham, Alabama.  Kimerling is in the business of purchasing used trucks and disassembling the trucks to rebuild new trucks or reclaim the parts. Plaintiff Steven Feigelson is a principal of Kimerling. Plaintiff Victor Feigelson, Steven's father, founded the company.  (Aff. of Steven Feigelson, Doc. 29, Attach. 2.)

Kimerling is licensed by the State of Alabama as a "used motor vehicle dealer, reconditioner, builder and/or wholesaler" and an "automotive

---

[1]Plaintiffs submitted evidence in Documents 29 and 30, much of which is duplicative. The references here are to Document 29, unless otherwise noted.

dismantler and parts recycler" under Ala. Code § 40-12-418.  Kimerling has a permit from the Alabama Department of Environmental Management authorizing "discharges associated with the salvage and recycling industry. . . ."  Kimerling is licensed by the City of Birmingham as an "automobile merchant."  (Doc. 29, Attach. 21.)

Defendant Scott Morro is a police officer with the City who has worked in the Auto Theft Division of the City's police department since April 2001. His primary assignment is to inspect and investigate motor vehicle garages, repair shops, storage facilities and junk and salvage yards and enforce any violations of city and state codes in relation to those operations.  (Morro Aff., Doc. 29, Ex. 24.)

On June 6, 1991, the Department of Urban Planning for Birmingham notified Mr. Vic Feigelson that the permit allowing Kimerling to use a strip of the City's property along Finley Boulevard would likely not be affected by future expansion of Finley Boulevard for at least five years, but the terms of the permit allowed the City to revoke it on 30 days notice.  (Doc. 29, Attach. 7.)

On July 26, 2002, Officer Morro cited Steven Feigelson for "parking/ storing disabled vehicles" in violation of a City ordinance. On November 21, 2002, Officer Morro filed an incident report in which he stated that Kimerling was storing disabled motor vehicles and vehicle parts on public property, failed to secure a junkyard license, and failed to comply with City Council requests to erect the proper fencing. (Doc. 29, Attach. 4, 5.)

On March 13, 2003, Officer Morro cited Steve Feigelson for parking which obstructed a sidewalk, and ordered him to appear in court on May 7, 2003. (Doc. 29, Attach. 22.)

On September 12, 2003, Officer Morro was notified that a person living near Kimerling had contracted West Nile virus and his daughter was inquiring about the City's spraying and investigation of possible mosquito nesting places in the area. (Doc. 29, Attach. 9.) On October 2, 2003, the City's attorney asked the Jefferson County Department of Health to investigate for the presence of mosquitoes on the Kimerling property and the occurrence of several West Nile virus cases near the property. (Doc. 29, Attach. 10.) Also on October 2, 2003, the City's attorney notified Kimerling that it was in violation of the City's code requiring it to have a license to operate a

junkyard within the City, and ordered Kimerling to remove all "wrecked, ruined, or dismantled" motor vehicles and parts by December 3, 2003. (Doc. 29, Attach. 20.)

On October 23, 2003, Officer Morro cited Victor Feigelson for having "no junkyard license," and "public way (no scrap or junk)." On October 24, 2003, Officer Morro cited Steven Feigelson for "public way (no scrap or junk)." (Doc. 29, Attach. 4, 5.)

On November 14, 2003, Kimerling appeared before the Hon. Raymond Chambliss in Jefferson County Circuit Court and was found guilty of violating City Code § 12-11-26, keeping scrap or junk on a public street or right of way and § 10-1-11, failing to conceal inoperable vehicles or junk, scrap, or parts from a public way.  (Doc. 29, Attach. 25, pp. 112-113.)  Kimerling was acquitted of violating § 12-11-27, operating a junkyard without a license. *Id.* at p. 67.

On January 23, 2004, Officer Morro arrested Steven Feigelson for operating a junkyard with no municipal junk dealer license in violation of City Code § 12-11-27.  In the arrest report, Officer Morro stated  he inspected Kimerling and found  the "premises were being used to store

wrecked, ruined, and dismantled motor vehicles. The premises were also being used to store parts of vehicles, scrap, tires, machinery, and other metals. The storing of these materials makes the premises a junkyard. The defendant was unable to produce a City of Birmingham junk dealer license." *Id.*

On January 6, 2005, Kimerling was notified that it would be audited on February 1, 2005, by the City to determine the accuracy of Kimerling's license and tax payments. (Doc. 29, Attach. 3.) The auditor concluded, "no adjustment due on the City of Birmingham . . . Business License." (Doc. 30, Attach. 4.)

The plaintiffs vigorously deny that they are operating a junkyard at their Finley Boulevard location. Further, they contend that, because they are licensed by the State of Alabama as an automotive dismantler pursuant to Ala. Code § 40-12-418, they are allowed to keep the off-product of dismantling on their premises, such as wheels, axles, and transmissions without purchasing a city junk dealer's license. (Steve Feigelson Aff., Doc. 29, Attach. 2.)

B.      Section 1983 Claims Against Officer Morro.

Officer Morro contends he is entitled to qualified immunity as to Plaintiffs' claims for civil damages because there is no evidence that his conduct violated clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow*, 457 U.S. at 818).  A public official is entitled to qualified immunity if his actions were objectively reasonable.  *Id.*, citing *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987).

There is no dispute that Officer Morro's actions were undertaken pursuant to the performance of his duties and within the scope of his authority.  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002); *See Harbert International, Inc. v. James*, 157 F.3d 1271 (11th Cir. 1998).

Once it is established that the defendant was acting within his discretionary authority, the burden shifts to the plaintiff to show that

qualified immunity is not appropriate. *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003). A two-part test is used to ascertain whether a public official acting within his discretionary authority is protected by qualified immunity. First, the court must determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Vinyard*, 311 F.3d at 1346 (citing *Hope v. Pelzer*, 536 U.S. 730, 735 (2002)); *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1240, 1248 (11th Cir. 2003). If the court is convinced that a constitutional right would have been violated under the plaintiff's version of the facts, the court must determine whether the right was clearly established at the time of the alleged violation. *Id.* The court will deny a public official qualified immunity only if the plaintiff convinces the court that the constitutional right at issue was clearly established at the time of the alleged violation. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002).

The plaintiffs argue that Officer Morro is not entitled to qualified immunity because he acted in bad faith by arresting Steven Fiegelson for operating a junkyard without a City license after Fiegelson had been

acquitted of a previous charge of operating a junkyard without a license. (Plaintiffs' Response, Doc. 29, Attach. 1.)

If an officer has probable cause to believe that an individual has committed even a misdemeanor criminal offense in his presence, he may arrest the offender without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause to arrest exists when the arrest is objectively reasonable, based on the totality of the circumstances. *Durruthy*, 351 F.3d at 1088. This standard is met when the facts and circumstances within the officer's knowledge would cause a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense. *Id*. (citations omitted). It is well established in federal law that the officer's subjective intent is immaterial to an ordinary probable cause analysis. *Id.*, n. 5.

Contrary to Plaintiffs' assertion in brief, the state judge at Steven Feigelson's November 14, 2003, trial did not explain his reasons for granting Feigelson's motion to dismiss or make any specific finding that Kimerling Truck Parts, Inc., was not a junkyard. (Doc. 30, Attach. 25, pp. 67-72.) Furthermore, a finding that Kimerling was not a junkyard prior to November

2003 would not preclude a subsequent finding that Kimerling was a junkyard at some time after November 2003. (Doc. 29, Attach. 25, pp. 112-113.) Accordingly, the trial court's November 14 dismissal did not prevent Officer Morro from having probable cause to arrest Feigelson for operating a junkyard without a license in January 2004.

Because the plaintiffs have failed to show that Officer Morro arrested Steven Feigelson in violation of clearly established constitutional law, Officer Morro's motion for summary judgment based on qualified immunity is due to be granted.

    C.    Section 1983 Claims Against the City.

The City argues it is entitled to summary judgment as to the Section 1983 claims because the plaintiffs have no evidence of a municipal policy, practice or custom which renders the City responsible for Officer Morro's actions. *Monell v. New York Dept. of Soc. Svcs.*, 436 U.S. 658 (1978)(municipalities cannot be held liable on a theory of respondeat superior under § 1983, and Plaintiff must show his constitutional deprivation resulted from a formally adopted unconstitutional governmental policy, or

unconstitutional practices of municipal officials which are so permanent and well-settled as to constitute a "custom or usage").

The plaintiffs respond that they can show their injury was caused by the City's policy or custom because the City persistently failed to take disciplinary action against Morro, citing *Martinez v. City of Opa-Locka*, 971 F.2d 708, 713 (11th Cir. 1992)(city was responsible for single decision of city manager to fire plaintiff in retaliation for exercise of free speech where city's charter eliminated authority of any official or body to review city manager's decision) and *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985)(allegation that police officer acted in accordance with unofficial custom of city which allowed police officers to use excessive force stated valid claim against city).  Plaintiffs claim the City is liable for Officer Morro's allegedly unconstitutional activities because: (1) the City failed to take disciplinary action against Officer Morro after "repeated complaints"; (2) the City prosecuted Morro's arrests; (3) the City put Morro in charge of clean-up efforts at Kimerling; (4) the City used Morro as the City's primary witness at trial; (5) the City included Morro in meetings with Mr. Feigelson;

(6) City Councilman Don Lupo[2] was present when Morro arrested Mr. Feigelson; (7) the City failed to discipline Morro for arresting Mr. Feigelson after Judge Chambliss and the City's auditor concluded Kimerling had sufficient licenses; and (8) the City filed a counterclaim in this action, showing a policy of harassing Mr. Feigelson.

The Plaintiffs have failed to identify any permanent and well-settled unconstitutional municipal custom, policy or practice which was being implemented by Officer Morro when the alleged constitutional deprivations[3] occurred. *Fundiller*, 777 F.2d at 1442; *Monell*, 436 U.S. at 690-91. To the extent the plaintiffs seek to establish the City's liability based on subsequent "ratification" of Officer Morro's discretionary decisions, they have not shown that Officer Morro's decisions were reviewed and approved by City policymakers or that policymakers knew of, and approved, an

---

[2] There is no attempt to claim or show Lupo was a final policymaker for the City with respect to any of the events at issue in this case. *See Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633 (11th Cir. 1991).

[3] As noted above, Plaintiffs claim the defendants took their property without due process of law in violation of the Fifth Amendment, violated the Fourth Amendment which provides that persons shall be free of unreasonable seizures, and violated the Fourteenth Amendment which provides that all persons and citizens shall be entitled to equal protection under the law. (Complaint, Counts 2, 3, 4.)

unconstitutional basis for those decisions. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 129-30 (1988); *Garvie v. City of Ft. Walton Beach*, 366 F.3d 1186, 1189 (11th Cir. 2004) (to state a successful § 1983 claim against a municipality based on a ratification theory, Plaintiffs must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis).

Accordingly, the City's motion for summary judgment as to the Section 1983 claims will be granted.

D.   Injunctive Relief.

The plaintiffs seek an injunction prohibiting the City and Officer Morro from: (1) harassing the plaintiffs' business operation; (2) arresting or threatening to arrest any plaintiff during the pendency of this action; (3) causing or ordering the plaintiffs to cease business during the pendency of this action; (4) causing or ordering the plaintiffs to dispose of inventory; or (5) making false statements to the state health department regarding the plaintiffs' business operation.

Any action for preliminary or permanent injunction must be based upon a claim which would withstand scrutiny under Fed. R. Civ. P. 12(b)(6). *Alabama v. U. S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005). In addition, the party seeking a permanent injunction must show: (1) he has prevailed in establishing the violation of the right asserted in the complaint; (2) there is no adequate remedy at law for the violation of the right; and (3) irreparable harm will result if the court does not order injunctive relief. *Id.* at 1128; *see O'Shea v. Littleton*, 414 U.S. 488, 502 (1974). On appeal, the standard for review of a preliminary or permanent injunction is abuse of discretion. *Simmons v. Conger*, 86 F.3d 1080, 1085 (11th Cir. 1996); *Church v. City of Huntsville*, 30 F.3d 1332, 1341 (11th Cir. 1994). However, if the trial court misapplies the law, the Court of Appeals will review and correct the error without deference. *Church*, 30 F.3d at 1342.

Because the plaintiffs have failed to establish the existence of a municipal policy or practice that can serve as a predicate to municipal liability under § 1983, they cannot meet the first prerequisite for obtaining a permanent injunction against the City, establishment of a violation of the

right asserted in the complaint. *Church*, 30 F.3d at 1343-47. Accordingly, the City's motion for summary judgment on the claims for injunctive relief is due to be granted.

However, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief; it is only a defense to personal liability for monetary damages. *Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995). Therefore, the claims for injunctive relief against Officer Morro are not barred by his qualified immunity defense. However, because injunctive relief is available does not mean that such equitable relief is appropriate. Officer Morro seeks summary judgment on the claims for injunctive relief, arguing that plaintiffs cannot meet any of the prerequisites. In response, the plaintiffs argue their claim for injunctive relief should go to a jury because there are questions of material fact. Although Plaintiffs are not entitled to a jury trial on their claims for equitable relief, summary judgment will not be appropriate if there is a question of material fact.

There are no questions of material fact, however. To the extent they seek an injunction based on a claim that Officer Morro violated the Equal

Protection Clause, Plaintiffs cannot show that he has burdened a fundamental right or targeted a suspect class, and his actions are rationally related to a legitimate government purpose. *Bah v. City of Atlanta*, 103 F.3d 964, 967 (11th Cir. 1997). As discussed above, Plaintiffs have not shown that Officer Morro violated the Fourth Amendment when he arrested Steven Feigelson. As to their taking claim, Plaintiffs cannot show that their remedy at law is inadequate.

For these reasons, the defendants' motion for summary judgment will be granted as to Plaintiffs' claims for injunctive relief.

E.  State Law Claims.

Plaintiffs' remaining claims arise under state law. Additionally, after removing the action to this court, the City filed a counterclaim arising solely under state law. Because the federal claims are due to be dismissed for the reasons set out in this opinion, this court will decline to exercise supplemental jurisdiction over the state law claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004)(district courts are encouraged to dismiss remaining state claims when the federal claims have been dismissed prior to trial).

Accordingly, the defendants' motion for summary judgment as to Plaintiffs' state law claims and defendants' motion for summary judgment as to its counterclaim will be denied, without prejudice. This action will be remanded to the Circuit Court of Jefferson County, whence it was removed.

III.   Conclusion.

For the reasons set forth herein, the defendants' motions for summary judgment will be granted as to all Plaintiffs' federal claims. The remaining state law claims in the complaint and counterclaim will be remanded to the Circuit Court of Jefferson County. A separate order will be entered.

Done this 17th day of November 2005.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153